UNITED STATES of America,
Plaintiff-Appellee,

v.

Raymond DREDING,
Defendant-Appellant.

No. 76–2711.

United States Court of Appeals,
Ninth Circuit.

Dec. 1, 1976.

Certiorari Denied Feb. 22, 1977.
See 97 S.Ct. 1143.

E. Richard Walker, Federal Public Defender (argued), Sacramento, Cal., for defendant-appellant.

Donald H. Heller, Asst. U. S. Atty. (argued), Sacramento, Cal., for plaintiff-appellee.

Before BROWNING and SNEED, Circuit Judges, and BURNS,* District Judge.

PER CURIAM:

Appellant (Dreding), a hobo, while riding on a train in California, turned the angle cock which controlled the flow of air through the train's braking system. Being convinced his clothing was too light for the wintry weather ahead, he took this action hoping the train would coast to a stop or slow sufficiently to allow him to get off. However, Dreding was unaware that there was a train ahead on the tracks, which necessitated an emergency stop. The turned angle cock impaired the train's braking ability and the two trains collided, causing serious damage to both.[1]

Dreding was convicted of violation of 18 U.S.C. § 1992, which provides that "whoever willfully derails, disables, or wrecks any train, engine, motor unit, or car

---

* Honorable James M. Burns, United States District Judge, District of Oregon, sitting by designation.

1. The government's evidence showed that the disabled train was traveling about 40 miles per hour; the total weight of the train was 6,000,000 pounds.

used, operated, or employed in interstate or foreign commerce by any railroad . . . shall be fined not more than $10,000 or imprisoned not more than twenty years, or both." The indictment charged Dreding with "knowingly and willfully disabling" a train. The government admits it had no proof that Dreding intended to wreck the train. Appellant contends that conviction under this statute and indictment requires proof beyond a reasonable doubt that the disabling act was done with intent to wreck the train. We disagree.

Not wishing "to give point to the quip that only when legislative history is doubtful do you go to the statute,"[2] we begin by examining the statute itself. The language of § 1992 suggests that Congress sought to prohibit the wrecking, disabling or derailing of a train (or any named part) employed in interstate commerce. The three operative verbs are set forth disjunctively, indicating that each of these acts is independently unlawful. Each of them may be expected to have serious consequences and to substantially interfere with interstate commerce. We believe that it was precisely this serious and substantial interference which Congress sought to prevent by the enactment of 18 U.S.C. § 1992. The second paragraph of § 1992, which clearly goes beyond actual train wrecking, lends further support to this interpretation. It provides that whoever:

". . . *willfully sets fire to,* or *places any explosive substance on or near,* or undermines any tunnel, bridge, viaduct, trestle, track, signal, station, depot, warehouse, terminal, or any other way, structure, property, or appurtenance used in the operation of any such railroad in interstate or foreign commerce, *or otherwise makes any such tunnel,* bridge, viaduct, trestle, track, signal, station, depot, warehouse, terminal, or any other way, structure, property, or appurtenance *unworkable or unusable* or *hazardous to work or use, with the intent to derail, disable, or wreck a train,* engine, motor unit, or car used, operated, or employed in interstate or foreign commerce . ."
(Emphasis supplied)

shall be guilty of an offense against the United States.

Considering the two paragraphs of the statute together it is evident that Congress was concerned not only with train wrecking but with any conduct which could substantially interfere with the interstate rail system. Thus it may reasonably be concluded that Congress would not have intended to limit the operation of the first paragraph, under which Dreding was charged, to situations in which specific intent to wreck a train could be established.

Consideration of the legislative history of § 1992 adds little to the foregoing discussion. It furnishes no clear guideline regarding congressional intent. At best it shows Congress intended to prohibit only willful, not merely negligent, conduct. However, this history does not compel a conclusion, as appellant claims, that Congress intended to go further and require specific intent to wreck.

The trial judge instructed the jury that

"To disable means to make unfit, cripple or incapacitate. The statute makes criminal the act of willfully performing that conduct which one knows will disable a train or cause it to malfunction in some serious way."

\* \* \* \* \* \*

"To knowingly and willfully disable a train means to do an act with the specific intent to incapacitate, make unfit, or cripple a train. The disability does not have to be permanent, so long as you find from the evidence presented that the defendant acting with the specific intent to disable a train did in fact commit an act that disabled the train."

We hold these instructions accurately set forth the intent which is required by the statute.

2. Frankfurter, Some Reflections on the Reading of Statutes, 47 Col.L.Rev. 527, 543 (1947).

Appellant also contends the indictment is constitutionally insufficient in that he is charged in the language of a statute which is vague and overbroad and fails to give him adequate notice of what conduct is proscribed. *United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). While "disable" may not be a word which radiates 100% clarity, nonetheless its meaning is sufficiently definite to apprise persons that engaging in conduct which amounts to disabling a train will expose themselves to criminal liability.[3]

█ *Webster's Third New International Dictionary, Unabridged,* defines disabled as "to make incapable or ineffective: incapacitate." This definition approximately parallels the language which the District Court used in charging the jury. As applied to appellant in the instant case § 1992 is constitutional. We need not decide whether it might be vague and overbroad as applied in some other situation. *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960).

Affirmed.

---

**3.** We note also that the indictment is sufficient to enable the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Debrow,* 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953).