UNITED STATES of America, Appellee,

v.

**James W. TURPIN, Appellant.**

No. 81–2437.

United States Court of Appeals,
Eighth Circuit.

Submitted May 21, 1982.

Decided May 6, 1983.

Rehearing and Rehearing En Banc Denied June 1, 1983.

---

1. Interestingly the majority opinion reverts to the contract law analogy in discussing this question.

Murry A. Marks, J.D., Clayton, Mo., for appellant.

Thomas E. Dittmeier, U.S. Atty., Timothy J. Wilson, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before ROSS and McMILLIAN, Circuit Judges, and ALSOP,* District Judge.

McMILLIAN, Circuit Judge.

This case is before us for the second time. The facts of the case are set out in our earlier opinion. *See United States v. Turpin,* 698 F.2d 351 (8th Cir.1983). Appellant was convicted by a jury of attempting to make the track and other railroad property hazardous to work and use, with the intent to derail, disable, and wreck a train, in violation of 18 U.S.C. § 1992. The district court sentenced appellant to five years imprisonment. According to the government's theory of the case, appellant killed his friend Steven Blake during a violent argument, placed the body in Blake's car, and then parked the car across the tracks at a railroad crossing, knowing that the car would be hit and demolished by an approaching train, in order to conceal the cause of death.

We remanded the case to the district court for further findings on the question whether appellant was in custody at the time he made the second statement to law enforcement officers on June 28, 1981. We retained jurisdiction of the appeal. The district court [1] referred the case to a magistrate [2] for a hearing and report and recommendation. 28 U.S.C. § 636(b). The magistrate found that appellant was not in custody on June 28, 1981; the district court accepted the report and recommendation of the magistrate. *United States v. Turpin,* No. 81–140–CR(2) (E.D.Mo. Apr. 5, 1983).

We now address the merits of the appeal. For reversal appellant argues that the district court erred in (1) failing to suppress certain physical evidence and statements, (2) admitting other crimes evidence, (3) refusing a requested jury instruction, and (4) denying his motion for judgment of acquittal. Appellant also argues that the cumulative impact of various trial errors denied him a fair trial. For the reasons discussed below, we affirm the judgment of the district court.

*Suppression of Evidence*

■ Appellant first argues that the district court erred in failing to suppress the physical evidence found in his house. Appellant argues that the officers obtained his consent to enter and to search the house by deceit because they did not tell him that Blake had been killed and that he was a homicide suspect. We disagree. "The test in reviewing a consent search is whether, in the totality of circumstances, the consent is given voluntarily and without coercion." *United States v. Dennis,* 625 F.2d 782, 793 (8th Cir.1980) (citations omitted); *see also Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). "[Because] the issue of consent is usually a factual one, a district court's finding of [voluntariness] must be accepted on appeal unless it is clearly erroneous." *United States v. Allison,* 619 F.2d 1254, 1262 (8th Cir.1980). The district court here found that appellant voluntarily agreed to the officers' entry and that their observation of blood stains inside the house was in plain view. *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). We cannot say that the district court's finding of consent is clearly erroneous.

■ Misrepresentations about the nature of an investigation may be evidence of coercion. *See, e.g., United States v. Meier,* 607 F.2d 215, 217 (8th Cir.1979) (per curiam)

---

* The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

2. The Honorable David D. Noce, United States Magistrate for the Eastern District of Missouri.

(tax investigation), *cert. denied,* 445 U.S. 966, 100 S.Ct. 1658, 64 L.Ed.2d 243 (1980). In addition, misrepresentations can invalidate the consent to search if the consent was given in reliance upon the misrepresentation. *See Bumper v. North Carolina,* 391 U.S. 543, 548–50, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1968). Here, the officers' failure to tell appellant that Blake had been killed was not a misrepresentation. The officers accurately told appellant that Blake had been in a train accident and that they were investigating the accident. Appellant did not ask any questions at that time and agreed to let the officers inside.

■ Appellant also argues that the officers' failure to tell him that he was a homicide suspect invalidated his initial consent and his later consent to search. Appellant in particular argues that Sheriff Whitmer, in talking to appellant's attorney, erroneously denied that appellant was "in trouble" or that appellant was a murder suspect. The district court noted that the officers in fact considered appellant a suspect in the killing but did not tell either appellant or his attorney of their suspicions. The district court specifically noted that the sheriff told the attorney that appellant was not a suspect. The district court characterized the sheriff's denial that appellant was a suspect as misleading, but concluded that other evidence strongly supported the finding that appellant's consent to search was voluntary. We cannot say that this finding is clearly erroneous. Although at the time of the search appellant had not been officially charged with Blake's murder, the officers did in fact consider appellant a suspect. We agree that the sheriff's denial of appellant's status as a suspect was somewhat misleading. However, as noted by the district court, the sheriff did supply the attorney with other information which clearly implied that appellant might become a suspect in the future. The officers misrepresented neither the fact that they were investigating a homicide nor that they wanted to search the house as part of their investigation. In particular, the officers

did not misrepresent the fact that they had no search or arrest warrant.

■ Appellant also argues that the district court erred in refusing to suppress the statements he made before and after the search. Before the search appellant told the officers that Blake had returned to the house Saturday afternoon, left with another man later that afternoon, returned again about 11:00 p.m., but immediately drove off again in the white Camaro. Appellant also told the officers that he was at home all Saturday night and left the house only briefly to go to his parents' house. After the search, in response to police questioning, appellant denied killing Blake and attributed the blood stains to a cut on the knee Blake suffered during a fight between Blake and appellant earlier that week. The government characterized these statements as false exculpatory statements. Appellant argues on appeal that the statements were the product of custodial interrogation, conducted without counsel, in violation of the fifth amendment, citing *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Fields v. Wyrick,* 682 F.2d 154 (8th Cir.), *rev'd,* —— U.S. ——, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982) (per curiam).

Appellant was not in custody at the time he made the first or second statement. Because *Miranda,* and by logical extension *Edwards,* applies only when there is a custodial interrogation, *see Edwards v. Arizona,* 451 U.S. at 486, 101 S.Ct. at 1885, neither statement was obtained in violation of the fifth amendment. *See, e.g., United States v. Jones,* 630 F.2d 613, 615 (8th Cir.1980) (per curiam).

*Other Crimes Evidence*

■ Appellant next argues that the district court erred in admitting evidence suggesting that he was involved in the death of Blake. Appellant argues that the homicide evidence was based on speculation and that its probative value was clearly outweighed

by its prejudicial impact.[3] The government argues that the homicide evidence and the train wreck evidence are all part of a single criminal transaction and that the homicide evidence was relevant to prove identity and motive.

In previous decisions we have set out the prerequisites that must be met for the admission of evidence of prior criminal or wrongful acts. These requirements track the pertinent portions of the Federal Rules of Evidence, Rule 404(b) and 403. A trial judge acts within his sound discretion in admitting evidence of prior wrongful acts when (1) the evidence is relevant to an issue in question other than that of the character of the defendant, (2) there is clear and convincing evidence that defendant committed the prior acts, and (3) the potential unfair prejudice of the evidence does not substantially outweigh its probative value. Broad discretion is afforded the trial judge in deciding whether to admit wrongful act evidence and his decision will not be overturned without a clear showing that the requirements have not been met.

*United States v. Evans,* 697 F.2d 240, 248 (8th Cir.1983) (footnote and citations omitted); *see, e.g., United States v. Young,* 618 F.2d 1281, 1289 (8th Cir.), *cert. denied,* 449 U.S. 844, 101 S.Ct. 126, 66 L.Ed.2d 52 (1980).

We find no abuse of discretion in the admission of the homicide evidence. The homicide evidence was an integral part of the immediate context of the crimes charged, *see United States v. Derring,* 592 F.2d 1003, 1007 (8th Cir.1979), and relevant to prove motive and identity because it tended to show why appellant parked the car across the railroad tracks. Although motive is not an element of the offense charged, motive may be evidence of identity. *See United States v. Peltier,* 585 F.2d

314, 321 (8th Cir.1978), *cert. denied,* 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979); *accord United States v. Benton,* 637 F.2d 1052, 1056–57 (5th Cir.1981). *See generally* 2 D. Louisell & C. Mueller, Federal Evidence § 140 (1978).

We also conclude that the district court did not abuse its discretion in determining that the prejudicial impact of the homicide evidence did not substantially outweigh its probative value. Fed.R.Evid. 403. Here, the homicide evidence was of substantial probative value; it provided a compelling motive for appellant's actions and was essential to the government's case. In addition, the prejudicial impact of the homicide evidence was reduced in part because the government refrained from introducing many details about the homicide. We note that the district court cautioned the jury about the limited purpose and relevance of the homicide evidence. *See United States v. Benton,* 637 F.2d at 1058; *United States v. Peltier,* 585 F.2d at 322.

Appellant also argues that the district court erred in permitting the government to introduce evidence suggesting a homosexual relationship between appellant and Blake. We disagree. The district court was aware of the potential prejudice in any references to such a relationship and repeatedly and strenuously admonished both the government and the defense against introducing evidence of a homosexual relationship. The district court's cautionary instructions were effective. Several witnesses testified about the friendship between appellant and Blake. One witness testified, without defense objection, that Blake and appellant argued about infidelity; however, this reference was brief and not emphasized.

---

**3.** Fed.R.Evid. 404(b) provides:

  (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, *intent, preparation, plan, knowl-*edge, identity, or absence of mistake or accident.

Under Fed.R.Evid. 403 otherwise relevant evidence should be withheld if it would unfairly prejudice, confuse, or mislead the jury, unreasonably delay the trial, or be merely cumulative evidence, and substantially outweighs the probative value of the evidence.

*Jury Instruction*

██ Appellant next argues that the district court erred in refusing to give his proposed instruction patterned after 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 14.14 (3d ed. 1977) (Evidence of Intent—Earlier Offense of Like Nature). We hold the district court properly refused appellant's proposed instruction because the proposed instruction was not relevant. The homicide evidence was not evidence of an earlier offense of like nature. *Compare United States v. Vosper,* 493 F.2d 433 (5th Cir.1974) (evidence of two bank robberies). As noted earlier, the district court properly instructed the jury about the limited relevance of the homicide evidence.

*Motion for Judgment of Acquittal*

██ Appellant next argues that the district court erred in denying his motion for judgment of acquittal. Appellant argues that the evidence was insufficient to sustain a conviction for attempting to make the railroad track hazardous to work and use with the intent to derail, disable, or wreck a train. Appellant stresses that no witness identified him as the person seen parking the car across the tracks.

In reviewing the denial of a motion for judgment of acquittal, we view the evidence in the light most favorable to the government, along with all reasonable inferences to be drawn therefrom, and determine if there is substantial evidence from which a jury could find the defendant guilty beyond a reasonable doubt. *See, e.g., United States v. Grady,* 665 F.2d 831, 835 (8th Cir.1981). The record contains substantial evidence from which the jury could have found that appellant was the person who parked the car across the tracks. The engineer's description of the clothing and general build of the person he saw crouching by the car moments before the collision matched the clothing appellant was wearing Saturday evening and early Sunday morning. McReynolds testified that appellant was out early Sunday morning. There was also evidence connecting appellant with Blake and the circumstances surrounding Blake's death, evidence which suggested a motive unique to appellant.

██ Appellant also argues that there was no evidence that the person who parked the car across the tracks did so with the specific intent to derail, disable, or wreck a train. In *United States v. Dreding,* 547 F.2d 471, 472 (9th Cir.1976) (per curiam), *cert. denied,* 429 U.S. 1108, 97 S.Ct. 1143, 51 L.Ed.2d 562 (1977), the court concluded that 18 U.S.C. § 1992 does not require the specific intent to wreck a train. In *Dreding,* a hobo, while riding a train, pulled the angle cock which controlled the air flow through the train's braking system. The defendant apparently wanted to slow down the train so he could jump off. Unknown to the defendant, there was another train ahead on the tracks which necessitated an emergency stop. The open angle cock impaired the operation of the braking system, and the trains collided. There was no evidence that the defendant intended to wreck the train. The court interpreted § 1992 to prohibit "not only train wrecking but ... any conduct which could substantially interfere with the interstate rail system" and rejected any requirement of proof of specific intent to wreck a train. *Id.* We agree that 18 U.S.C. § 1992 does not require proof of specific intent to wreck a train. The government was required to prove that appellant knowingly committed an act in an attempt to make the track or other railroad property hazardous to work or use and did so by showing that appellant intentionally parked a car across the tracks in the path of an approaching train. In particular the government was not required to show damage to the train or that the collision could not have been avoided.

*Fair Trial*

██ Appellant next argues that the cumulative impact of the homicide evidence, his statements made to the law enforcement officers, the refused instruction, references to the homosexual relationship, and the government's closing argument was so prejudicial that it deprived him of a fair

trial. We have already discussed each allegation of error, with the exception of the government's closing argument, and held each to be without merit. We have carefully reviewed the government's closing argument. For the most part the government's closing argument consisted of a statement of the government's theory of the case, a summary of the evidence, without undue emphasis on the homicide evidence, and circumspect references to appellant's relationship with Blake, their arguments, and fidelity. Defense counsel did not object to the specific remarks now raised on appeal. We find no abuse of the district court's discretion to control closing argument. *See, e.g., United States v. Bohr,* 581 F.2d 1294, 1301 (8th Cir.), *cert. denied,* 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978).

Accordingly, we affirm the judgment of the district court.