HAYNES, Circuit Judge:
A jury found Defendant Joshua Jermaine Kinchen (“Joshua”) guilty of knowingly distributing at least 50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). Joshua appeals, contending (1) the district court abused its discretion in admitting evidence of a prior possession of a distributable amount of cocaine and his statement during that prior arrest that the only way he knew how to earn a living to support his family was selling drugs; (2) the district court erred in refusing to allow a witness to invoke the Fifth Amendment in the presence of the jury; and (3) the district court abused its discretion by sentencing Joshua to a term of imprisonment above the Guidelines’ recommended range. We AFFIRM.
I
Federal Bureau of Investigation (“FBI”) Agent Bret Stiles worked with local police in connection with the investigation of a drug-trafficking organization. The target of the investigation was Roger Brooks (“Roger”), the head of the organization. Stiles paid Quamlisha Brooks (“Quamli-sha”) for services as a confidential informant. At Stiles’ direction, Quamlisha arranged to purchase two and one-quarter ounces of cocaine base from Roger.
Quamlisha contacted Roger to arrange the drug deal. Quamlisha was on the telephone with Roger while driving to a nearby convenience store to purchase the cocaine. She parked her car at a gas pump next to a maroon Ford Expedition with license plate number OIC578.[1] Still on the phone with Roger, the driver of the Expedition got her attention and identified himself as “LiT Maine,” and Quamlisha asked Roger if he sent this individual to sell her the cocaine instead of coming himself. Quamlisha handed the telephone to the Expedition’s driver. Roger verified the seller, and the drug sale occurred.
Leaving the store, Quamlisha called agent Stiles, who was nearby observing the transaction, and told Stiles the driver was not Roger, as they both had expected. Stiles followed the Expedition to Old River Road, the street Joshua lived on with his brother, Nathaniel Kinchen (“Nathaniel”), and then called local police to see if they knew anyone who used the nickname “Little Maine.” A detective at the police station believed that Joshua was known as “Little Maine.” On the same day as the drug transaction, Stiles showed Quamlisha a photograph of Joshua and asked, “Who is this?” She identified the person in the photograph as the Expedition’s driver. Quamlisha also selected the same photograph of Joshua out of a photographic lineup seven months later. A single count indictment charged Joshua with distributing 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Joshua pled not guilty and trial ensued.
Prior to trial, the Government moved to introduce evidence that Joshua had a prior conviction for possession of cocaine. Ten months prior to the charged offense, in a separate incident, a detective, Corporal John Johnson, stopped and searched Joshua and found 21 grams of crack cocaine and $3522 cash in his pocket. Joshua was convicted for that possession in July 2009, a month before the charged offense. The Government also sought to admit a concurrent statement made by Joshua to John *470 son. According to Johnson, Joshua said he sold crack cocaine “because he did not know how to do anything else and that he had mouths to feed.”
The district court held multiple pre-trial hearings considering the admissibility of Johnson’s testimony. The district court held that both the possession and the concurrent statement would be admissible, subject to the condition that the Government make no reference to Joshua’s coincident arrest or conviction. The Government agreed that it would not introduce evidence of Joshua’s 2009 conviction, but specified that Johnson would testify that he found crack cocaine on Joshua and repeat the statement that Joshua made to him. Over Joshua’s objection, the district court ruled that the evidence of Joshua’s prior possession and statement was intrinsic to the crime charged. The court alternatively ruled that the evidence was admissible under Rule 404(b) of the Federal Rules of Evidence as evidence of identity, motive, or intent.
At trial, Joshua contended that his brother Nathaniel, who looks similar to him, was the driver of the Expedition. In fact, Roger testified that he knew Nathaniel, not Joshua, as “LiT Maine” and “Maine Maine.” Roger testified that on the day of the transaction, he was leaving town and called Nathaniel with instructions to obtain cocaine for sale to Quamlisha. Roger spoke to both Nathaniel and Quamlisha near the time of the exchange, but Roger admitted that he was not paying attention to whom he was speaking with when Quamlisha handed the telephone to the Expedition’s driver. Roger’s phone records showed telephone calls to or from Nathaniel’s and Quamlisha’s numbers, but not to or from Joshua’s number, on the day of the transaction. Roger testified that he had never used Joshua to help in a drug transaction, although he had provided cocaine to Joshua on at least nine prior occasions. He usually provided Joshua with about a gram of cocaine. Roger testified that he observed cars arriving and leaving the Kinchens’ residence and he inferred they were drug deals, but he never witnessed drugs being exchanged. Roger stated that Joshua took part in whatever business the cars brought to the residence, but he did not believe Joshua was involved in the transaction at issue. On appeal, Joshua does not challenge the admission of any portion of Roger’s testimony.
Detective Steven Lovett testified that he knew Joshua to be “Little Maine.” Quam-lisha testified, identifying Joshua as the Expedition driver and stating that she remembered being very attracted to Joshua, who was wearing a gold grill on his teeth. Roger and Joshua’s girlfriend both testified that Joshua sometimes wore a gold grill on his teeth. Roger testified that Nathaniel had four permanent gold teeth, two on the top and two on the bottom. The jury found Joshua guilty; he was sentenced to be imprisoned for 180 months and to be placed on supervised release for five years. Joshua appeals.
II
We apply an abuse-of-discretion standard in reviewing a district court’s evidentiary rulings. United States v. Coleman, 78 F.3d 154, 156 (5th Cir.1996). The abuse-of-discretion standard is “heightened” when evidence is admitted under Federal Rule of Evidence 404(b), because “[e]vidence in criminal trials must be strictly relevant to the particular offense charged.” United States v. Jackson, 339 F.3d 349, 354 (5th Cir.2003) (internal quotation marks omitted).
“A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment *471 of the evidence.” United States v. Yanez Sosa, 513 F.3d 194, 200 (5th Cir.2008) (quoting United States v. Ragsdale, 426 F.3d 765, 774 (5th Cir.2005)). “Nevertheless, erroneous admissions under Rule 404(b) are subject to a harmless error inquiry.” United States v. McCall, 553 F.3d 821, 827 (5th Cir.2008) (internal citations omitted).
Ill
Joshua argues that the district court reversibly erred in admitting evidence of his prior possession and the concurrent statement that he sold drugs to support his family, contending that, (1) the evidence was not intrinsic to the crime charged; (2) the district court abused its discretion in alternatively holding that the evidence was admissible under Rule 404(b); and (3) because the evidence tying him to the crime was minimal, any error was not harmless.
The district court held that Joshua’s pri- or possession and statement that he sold drugs to support his family was admissible as intrinsic evidence, or if not intrinsic, then “definitely 404(b).” The district court noted that while the evidence was prejudicial, it was relevant to either identity, motive, or intent because it showed that Joshua was a dealer, rather than merely a user, of cocaine. After Johnson testified, the district court provided a limiting instruction cautioning the jury that Joshua was not on trial for any act or conduct or offense not alleged in the indictment.
We agree with Joshua that the evidence in question was not intrinsic evidence. “Evidence of an act is intrinsic when it and evidence of the crime charged are inextricably intertwined, or both acts are part of a single criminal episode, or it was a necessary preliminary to the crime charged.” United States v. Sumlin, 489 F.3d 683, 689 (5th Cir.2007). Intrinsic evidence is “admissible to complete the story of the crime by proving the immediate context of events in time and place.” Coleman, 78 F.3d at 156. Joshua was arrested for the prior possession and made the concomitant statement in October 2008, over a year before the drug transaction in the instant indictment. There is no evidence linking that earlier possession to the drug deal that Roger orchestrated for Quamlisha. Nor has the Government argued to the district court, or on appeal, that Johnson’s testimony was intrinsic. Thus, we conclude that the district court was incorrect in stating that the testimony regarding the prior possession and concomitant statement was intrinsic. The evidence of Joshua’s prior possession of cocaine and his concurrent statement were extrinsic to the offense charged here.
Accordingly, we turn to the central issue; whether the district court abused its discretion by admitting that evidence under Federal Rule of Evidence 404(b).[2] In United States v. Beechum we set out a two-part test for determining whether extrinsic evidence is admissible under Rule 404(b). 582 F.2d 898, 911 (5th Cir.1978) (en banc). “First, it must be determined that the extrinsic evidence is relevant to an issue other than the defendant’s character.” Id. (emphasis added). “Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403.” Id.[3]
*472 The standard for relevancy under Beechum’s first prong is identical to that found in Rule 401 of the Federal Rules of Evidence: whether the evidence has “any tendency to make a fact more or less probable than it would be without the evidence” and “the fact is of consequence in determining the action.” Fed.R.Evid. 401; see Beechum, 582 F.2d at 911. An extrinsic act is relevant to an issue other than the defendant’s character if it is offered to prove one of the elements listed in Rule 404(b): “motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.” Fed. R. Evid. 404(b); United States v. Sanders, 343 F.3d 511, 518 (5th Cir.2003).
Evidence of “motive” is thus relevant in that it helps establish that Joshua had a reason to commit the charged offense. See e.g., United States v. Benton, 637 F.2d 1052, 1056-57 (5th Cir.1981) (upholding admissibility of prior murders where relevant to show defendant’s motive for charged murder). “Motive has been defined as ‘the reason that nudges the will and prods the mind to indulge the criminal intent.’ ” Id. at 1056 (citing Beechum, 582 F.2d at 911 n. 15); see also Black’s Law Dictionary 1039 (8th ed. 2004) (“Motive” is “[something ... that leads one to act.”). The extrinsic act evidence need not be similar to the charged offense when the extrinsic evidence is introduced to show motive. Beechum, 582 F.2d at 911 n. 15.
Motive is not an ultimate issue in this case, such as an element of the criminal offense, but it is part of the story and provides context to the events in question. By showing motive—that this defendant had a reason to commit the crime—the Government’s more important purpose was to offer circumstantial evidence to support Joshua’s identity. See Benton, 637 F.2d at 1057. The prior possession is, of course, not admissible to show Joshua’s propensity to deal drugs. Yet, extrinsic evidence of prior drug use or possession is relevant to establishing motive where the actions help establish why the defendant wanted to commit the charged offense.[4] See, e.g., United States v. Bitterman, 320 F.3d 723, *473 727 (7th Cir.2003) (holding evidence of defendant’s prior drug use and heroin addiction admissible to establish defendant’s motive to commit robbery); United States v. Weems, 322 F.3d 18, 25 (1st Cir.2003) (holding evidence of drug dealing at house where defendant was arrested admissible in felon-in-possession-of-firearm prosecution to establish defendant had motive to carry weapon). Joshua’s concurrent statement that he dealt drugs because he did not know how else to support his family is clearly relevant to establishing what led Joshua to commit the charged offense. This evidence, in turn, countered the defense strategy of portraying Joshua as primarily a user, not a dealer, of cocaine. We conclude that the district court did not abuse its discretion by holding that Joshua’s prior possession and his concurrent statement were relevant to his motive.
Turning to step two of our Beechum analysis, we must assess whether the district court abused its discretion in holding that the prejudicial effect of Joshua’s prior possession and concurrent statement did not substantially outweigh the probative value. See Beechum, 582 F.2d at 913; see also Fed.R.Evid. 403.[5] We consider several factors in determining whether the prejudicial effect of the extrinsic evidence substantially outweighs its probative value: (1) the government’s need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court’s limiting instructions. United States v. Sanchez, 988 F.2d 1384, 1394 & n. 14 (5th Cir.1993) (citing Beechum, 582 F.2d at 915). The probative value of extrinsic evidence may be measured by whether and to what extent the accused’s motive, intent, or other characteristic “is established by other evidence, stipulation, or inference.” Beechum, 582 F.2d at 914. The inquiry “calls for a commonsense assessment of all the circumstances surrounding the extrinsic offense.” Id. The more closely an extrinsic offense resembles the charged offense, the greater the prejudice to the defendant, id. at 915 n. 20, but it does not follow that similarity requires exclusion of the evidence. United States v. Cockrell, 587 F.3d 674, 679 (5th Cir.2009). Importantly, we make this analysis concerning Rule 403 through a lens that gives great deference to the district court’s informed judgment in weighing the factors. See United States v. Moye, 951 F.2d 59, 62 (5th Cir.1992).
The prejudicial effect of extrinsic evidence substantially outweighs its probative value when the relevant exception, i.e. motive, is uncontested, because the incremental probative value of the extrinsic offense is inconsequential when compared to its prejudice. United States v. Roberts, 619 F.2d 379, 382 (5th Cir.1980) (citing Beechum, 582 F.2d at 914). However, we disagree with Joshua’s apparent argument that only his identity and not his motive were at issue, such that the motive evidence was of minimal probative value. The two issues were intertwined here given Joshua’s theory of mistaken identity, premised in part on his argument that he was principally a user.[6] Evidence of Josh *474 ua’s motive to be involved in a drug transaction, then, was probative of establishing his presence at the scene of the crime and his role in this transaction. We conclude that the district court did not err in finding this evidence probative.[7]
Addressing the potential prejudicial effect, we note that the jury heard from Roger (without objection) that Joshua used cocaine and participated in drug deals. Thus, the “feed his family” evidence was not the only evidence suggesting Joshua was a drug dealer. Furthermore, it was not the sort of admission of acts of a “heinous nature” that would inflame the jury to act irrationally. See Beechum, 582 F.2d at 917. Any prejudicial effect of the testimony was further diminished by the district court’s instructions to the jury regarding the “limited purpose[] for which any evidence of other similar acts may be considered.” See Crawley, 533 F.3d at 355. We have also held that “proof of prior drug activities is more probative than prejudicial” in proving Rule 404(b) exceptions such as knowledge or intent. United States v. Harris, 932 F.2d 1529, 1534 (5th Cir.1991) (citing cases); see also United States v. Thomas, 348 F.3d 78, 86 (5th Cir.2003) (“[T]he district court properly explained that the evidence of the defendant’s prior convictions for cocaine-related offenses is probative of the [defendant having the requisite state of mind or intent to participate in the present cocaine-related offenses.” (internal quotation marks and citation omitted)). We conclude that it was not an abuse of discretion for the district court to conclude that the prejudicial effect of the evidence did not substantially outweigh its probative value. We thus do not address the question of harmlessness of any error.
IV
Joshua also challenges the procedure followed by the district court with respect to Nathaniel’s testimony. At a pre-trial hearing, the district court appointed an attorney for Nathaniel and ordered the parties to file questions they wanted to ask of Nathaniel. Of the questions submitted, the court selected five that would be allowed. The court conducted a subsequent hearing to determine whether Nathaniel wanted to invoke his Fifth Amendment right against self-incrimination. Nathaniel was sworn in as a witness, the court explained that answers to some submitted questions may incriminate him, and Nathaniel’s counsel said Nathaniel would invoke his right.
Joshua requested to ask Nathaniel each of the questions in front of the jury and have him invoke his right to each individual question. Over Joshua’s objections, at trial he was permitted to ask Nathaniel only the questions pre-approved by the court. On appeal, Joshua argues that this overall procedure denied him his Sixth Amendment right to present witnesses on *475 his behalf and his Fifth Amendment right to due process of law. He specifically complains that he was not able to explain to the jury why Nathaniel’s testimony was so limited.
“A valid assertion of the witness’ Fifth Amendment rights justifies a refusal to testify despite the defendant’s Sixth Amendment rights.” United States v. Goodwin, 625 F.2d 693, 701 (5th Cir.1980) (citing United States v. Lacouture, 495 F.2d 1237 (5th Cir.1974); United States v. Gloria, 494 F.2d 477 (5th Cir.1974)). A district court’s decision to exclude a witness’ testimony based on an invocation of the witness’ Fifth Amendment privilege is reviewed for an abuse of discretion. United States v. Boyett, 923 F.2d 378, 379-80 (5th Cir.1991). It was within the district court’s discretion to prevent Joshua from making Nathaniel invoke his Fifth Amendment privilege in the presence of the jury. See Lacouture, 495 F.2d at 1240. Joshua has no “right to benefit from any inferences the jury may draw simply from the witness’ assertion of the privilege,” which may have been the purpose of Joshua’s questions to Nathaniel, according to Joshua’s appellate brief. See id.
In United States v. Mares, we found no error in the trial court’s refusal to allow counsel to take a witness question-by-question outside of the presence of the jury for the purpose of having the witness invoke his right after each question. 402 F.3d 511, 514-15 (5th Cir.2005). A key focus is whether the trial court inquires into the legitimacy of the invocation, see id., which is an issue Joshua does not brief on appeal. We conclude that Joshua does not present any error warranting reversal in this regard.
V
Finally, Joshua challenges the procedural and substantive reasonableness of his above-Guidelines sentence.[8] On appeal, Joshua first argues that his sentence was unreasonable because the court did not use the Fair Sentencing Act’s (“FSA”) five-year mandatory minimum sentence. After his sentencing hearing, the Supreme Court subsequently determined that the FSA applies to an offender like Joshua whose crime preceded August 3, 2010, but was sentenced after that date. See Dorsey v. United States, — U.S. -, 132 S.Ct. 2321, 2331, 183 L.Ed.2d 250 (2012). Thus, Joshua is correct that the FSA applies to his sentence.
However, we do not remand such a procedural error if the Government proves the error is harmless by “pointing] to evidence in the record that will convince us that the district court had a particular sentence in mind and would have imposed it, notwithstanding the error made[.]” United States v. Delgado-Martinez, 564 F.3d 750, 753 (5th Cir.2009) (citation omitted). Here, the Government shows that the presentence report used the FSA-amended, 2011 version of the Guidelines to produce a recommended range of 120 to 150 months. The court gave an upward variance because it concluded that 150 months was insufficient.
A panel of this court recently considered this same argument and found any error in not recognizing the FSA’s retroactive applicability was harmless, relying on authority that found harmless error when an imprisonment term was not lengthened as the result of such error. United States v. Williams, 505 Fed.Appx. 343, 344 (5th Cir.2013) (unpublished) (citing United States v. Teel, 691 F.3d 578, 587 (5th Cir.2012)), cert. denied, — U.S. -, 133 S.Ct. 2375, *476 185 L.Ed.2d 1092 (2013). Similarly, here, we conclude that this error was harmless; the mandatory minimum was not the basis for the district court’s decision to vary upward.
Joshua next argues his sentence was procedurally unreasonable because the court failed to adequately explain its reason for deviating from the Guidelines’ recommended range. Joshua contends that we cannot determine how substantial a deviation the court intended to make because it did not start with the five-year mandatory minimum sentence. He cites Gall v. United States, for the proposition that “a major departure should be supported by a more significant justification than a minor one.” 552 U.S. 38, 50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007).
Yet, the court’s upward variance was from the range calculated under the Guidelines (120 to 150 months)—a range Joshua does not challenge—not from a statutory minimum. After looking at the factors in 18 U.S.C. § 3553(a) and adopting the presentence report’s findings, the district court repeatedly expressed its concern with the level of violence exhibited in past crimes and Joshua’s lack of respect for the law, and concluded that Joshua needed more than a 150-month sentence to afford adequate deterrence in light of the danger he presented to the public. Similarly, in its statement of reasons, the district court explained that Joshua needed a “stern sentence” for, among other things, deterrence purposes. This articulation is adequate under our precedent. See United States v. Rhine, 637 F.3d 525, 528 (5th Cir.2011) (affirming a 180-month sentence where the recommended Guidelines range was 30 to 37 months, and the court’s articulated reasons paralleled the § 3553(a) factors).
Last, Joshua contends his sentence was substantively unreasonable because the court “pointed to no specific feature of [his criminal] history that was not properly reflected in his criminal history calculation.” He also claims Nathaniel received a lesser sentence for similar conduct.
These arguments are not briefed. In any event, we conclude that the district court adequately explained its reason for varying upward. Any dissimilarity with Nathaniel may be understood in light of the fact that Nathaniel accepted responsibility for his crime, while Joshua did not, so they are not similarly situated. See United States v. Guillermo Balleza, 613 F.3d 432, 435 (5th Cir.2010) (the § 3553(a)(6) “disparity” factor requires district courts to avoid only unwarranted disparities between similarly situated defendants nationwide and does not require the district court to avoid sentencing disparities between co-defendants who might not be similarly situated); United States v. Candia, 454 F.3d 468, 476 (5th Cir.2006).
AFFIRMED.

. The jury received a stipulation of fact revealing that Joshua operated this vehicle in some instances during July and August 2009.

. "Rule 404(b) is only implicated when the offered evidence is extrinsic; evidence intrinsic to the charged offense does not implicate [404(b)].'' United States v. Crawley, 533 F.3d 349, 353-54 (5th Cir.2008).

. Joshua contends that the district court failed to engage in a Beechum analysis. *472 "When requested by a party, a trial court must articulate on the record its findings as to the Beechum probative value/prejudice evaluation.” United States v. Anderson, 933 F.2d 1261, 1269 (5th Cir.1991). Even without a request, a court should identify the admissible purpose of the rule and “explain why the evidence’s probative value is not substantially outweighed by its undue prejudice” if admissibility of the extrinsic evidence is a close question. Id. at 1270 (internal quotation marks and citation omitted).
Though Joshua objected to the admissibility of the evidence under 404(b), he never requested that the district court record its Beec-hum findings. The district court’s oral 404(b) ruling was not a model of clarity. Nonetheless, while the district court could have been more clear, we conclude that it did engage in a Beechum analysis. The district court held multiple pre-trial hearings to consider the admissibility of Johnson’s testimony. The court explained that even if the evidence was not intrinsic, it was admissible as extrinsic evidence of Joshua's motive, discussed that the evidence was relevant circumstantial evidence in light of Roger’s proposed testimony, and acknowledged the potential prejudicial effect but nevertheless admitted the evidence because of its relevancy and on the condition that the Government not refer to an actual conviction for the prior possession. Thus, Joshua's contention that the district court failed to engage in a Beechum analysis is without merit. Cf. Anderson, 933 F.2d at 1270 (remanding for Beechum analysis where nothing in record reflected that court applied Beechum test).

. The dissenting opinion points out that an extrinsic act may support the inference of a mental state when the act is a consequence of the mental state. Joshua's prior possession— in an amount seemingly greater than that for personal use—and the quantity of cash inferentially rebut Joshua's defensive assertions that he was only a user and thus support his motive for the sale of drugs.

. Rule 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
Fed.R.Evid. 403. Beechum essentially incorporates Rule 403's balancing test as its second prong. See Crawley, 533 F.3d at 355.

. The fallacy of this "only identity is at issue” theory is shown by the following hypothetical. *474 Suppose X is charged with murdering Y. Can X avoid the introduction of evidence to show he had a motive to murder Y by conceding that somebody with a motive murdered Y, just not him?

. Further, we may affirm the district court’s denial a motion to suppress evidence based on any basis in the record. See United States v. Pack, 612 F.3d 341, 347 (5th Cir.2010); United States v. Charles, 469 F.3d 402, 405 (5th Cir.2006). The district court held the evidence as admissible to prove motive, intent, or identity. The dissenting opinion appears to concede that the evidence would have been admissible as proof of intent, but for intent not being contested at trial. Because we again disagree that Joshua could “concede” the intent of the driver, and thus prevent the Government from introducing evidence proving this point, we note the evidence may have been properly admitted under 404(b) on the basis of intent as well.

. The Guidelines range was 120 to 150 months.