# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-40518

United States Court of Appeals
Fifth Circuit

**FILED**

April 12, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CRYSTAL YVETTE MARTINEZ,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:14-CR-443-2

Before STEWART, Chief Judge, and JONES and OWEN, Circuit Judges.

PER CURIAM:*

Defendant-appellant appeals her convictions for possession and conspiracy to possess with intent to distribute more than fifty grams of methamphetamine and importation and conspiracy to import more than fifty grams of methamphetamine on two grounds. First, defendant-appellant claims that the district court erred when it admitted extrinsic evidence of her alleged involvement in bulk cash smuggling between the United States and

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-40518

Mexico. Second, she argues that the court erred by not declaring a mistrial when a witness testified about her prior criminal record. Because the district court did not abuse its discretion, we AFFIRM.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Defendant-appellant, Crystal Yvette Martinez, was a passenger in a car attempting to cross into the United States from Mexico. The car contained a large amount of soap and fabric softener. When the United States Customs and Border Protection ("CBP") agent asked why they had so many cleaning supplies, the car's driver, Tina Marie Trevino, replied that she was opening a dry-cleaning business. The CBP agents' search ultimately revealed approximately 116 kilograms (over 255 pounds) of methamphetamine hidden in the soap and fabric softener.

The day before, Trevino and Martinez had performed a similar crossing with cleaning supplies but no drugs. Trevino later explained that this was a dry run to test their smuggling plan. Earlier that day, Martinez had sent Trevino a text message asking "when are we going to work, I need cash, cash, cash?" Trevino responded, texting that they would work tomorrow and for Martinez to call her about work.

After being detained, two special agents from Homeland Security Investigations ("HSI") arrived and questioned Trevino. When asked about the texts between herself and Martinez, Trevino initially said that the "work" was unrelated to the smuggling and that Martinez did not know narcotics were in the car. Eventually, Trevino told the HSI agents that she and Martinez were aware that there were drugs in the car. According to Trevino, on the day they were arrested, she and Martinez went together to pick up the methamphetamine from a home in Matamoros, Mexico. Trevino stated that Martinez was present when discussions about the drugs took place. Trevino

2

also said that she opened a bottle of fabric softener and broke a bar of soap in half, showing Martinez the drugs.

A grand jury indicted Martinez and Trevino on four counts: (1) conspiracy to possess a controlled substance with intent to distribute;[1] (2) possession of a controlled substance with intent to distribute;[2] (3) conspiracy to import a controlled substance;[3] and (4) importation of a controlled substance.[4] Martinez pleaded not guilty. Trevino entered into a plea agreement in which she agreed to testify against Martinez in exchange for a sentencing recommendation at the low end of her Guidelines range and a recommended downward departure.

Before Martinez's trial, the Government provided notice that it intended to offer extrinsic evidence of Martinez's involvement in a prior money smuggling offense pursuant to Federal Rule of Evidence 404(b). Specifically, it wanted to show that Martinez had directed her sister, Diana Martinez, to transport money from Texas to Matamoros—the same city in which Martinez and Trevino had obtained the methamphetamine—on four occasions, one of which resulted in Diana's arrest for smuggling $100,000. The district court initially stated that it was inclined to exclude the evidence because it did not "tend to corroborate the allegations made in this indictment" and because no one had "testif[ied] regarding this being like the second half of the equation, drugs going north and money coming south."

The Government called an HSI special agent, who at the time was assigned to a high intensity drug trafficking area, to testify. He asserted that for a narcotics organization to remain operational, the proceeds from the

---

[1] 21 U.S.C. §§ 841(a)(1), 846.

[2] *Id.* § 841(a)(1).

[3] *Id.* §§ 952(a), 963.

[4] *Id.* § 952(a).

3

No. 16-40518

narcotics smuggled into and sold in the United States must be smuggled back into Mexico. He also noted that it is common for a person who smuggles narcotics into the United States to be involved in smuggling the proceeds back into Mexico. Concluding that this testimony provided a sufficient basis upon which to admit the extrinsic evidence, the court allowed Diana to testify over Martinez's objection. The district court provided a limiting instruction before Diana testified and another before closing arguments.

Later in the trial, during Trevino's direct examination, the Government asked her why she originally told HSI agents that Martinez had no knowledge of the narcotics. Trevino replied that she did so "[b]ecause [she] knew [Martinez] has a lot of record, and [she] didn't want [Martinez] to do a lot of time." Martinez's counsel objected, stating that Martinez's criminal history was not relevant. The district court sustained the objection and instructed the jury that "any evidence that you may have heard in response to a question is—should not be considered by you as evidence that the defendant committed the acts alleged in this indictment." Martinez's counsel moved for a "discussion," which Martinez asserts was a motion for a mistrial. The district court denied the motion.

The jury found Martinez guilty on all counts, and the district court denied Martinez's request for a directed verdict. Martinez timely appealed her conviction.

## II.  DISCUSSION

### A. *Extrinsic Acts*

Martinez claims that the district court erred when it allowed testimony that she paid her sister, Diana, to smuggle cash into Mexico. First, she asserts that the introduction of Diana's testimony unconstitutionally shifted the burden to Martinez "to prove that her prior knowledge of [Diana's smuggling]

4

should not be imputed to the crimes for which [Martinez] was charged."[5]  Next, she contends that Diana's testimony was improperly admitted under Rule 404(b) because it was both "irrelevant to the drug trafficking offense" and "unduly prejudicial."

We evaluate a district court's evidentiary rulings for abuse of discretion. *United States v. Sumlin*, 489 F.3d 683, 688 (5th Cir. 2007).  However, we subject evidence admitted under Rule 404(b) in a criminal case to a heightened review to ensure "that the evidence [is] strictly relevant to the particular offense charged." *United States v. Olguin*, 643 F.3d 384, 389 (5th Cir. 2011). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Kinchen*, 729 F.3d 466, 470–71 (5th Cir. 2013) (quoting *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008)).  Even so, we will not reverse where the error was harmless. *United States v. McCall*, 553 F.3d 821, 827 (5th Cir. 2008).

Rule 404(b) precludes "[e]vidence of a crime, wrong, or other act" when used "*solely* for the purpose of showing that the defendant had a bad character and that [s]he acted in conformity with it." *United States v. Gonzales-Lira*, 936 F.2d 184, 189 (5th Cir. 1991) (emphasis added).  Extrinsic evidence may be introduced, however, if offered to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).  Our court applies "a two-part test for determining whether extrinsic evidence is admissible under Rule 404(b)." *Kinchen*, 729

---

[5] Martinez has not provided any authority to support the proposition that the introduction of Diana's testimony unconstitutionally shifted the burden of proof. Regardless, her claim is meritless.  The Government was required to prove beyond a reasonable doubt that Martinez had knowledge of the narcotics, and the district court correctly instructed the jury on the burden of proof. *See In re Winship*, 397 U.S. 358, 364 (1970).

F.3d at 471 (citing *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir. 1978) (en banc)). "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character." *Beechum*, 582 F.2d at 911. Second, the evidence admitted under Rule 404(b) must satisfy Rule 403's requirement that its danger of unfair prejudice not substantially outweigh its probative value. *Id.*

### 1. Relevancy

The first prong applies a relevancy standard "identical to that found in Rule 401," namely, "whether the evidence 'has any tendency to make a fact more or less probable than it would be without the evidence' and 'the fact is of consequence in determining the action.'" *Kinchen*, 729 F.3d at 472 (quoting Fed. R. Evid. 401). Intent is always a material issue in a drug trafficking case. *United States v. Pompa*, 434 F.3d 800, 805 (5th Cir. 2005). Martinez's decision to plead not guilty put her intent and knowledge at issue. *See Olguin*, 643 F.3d at 390.

The Government's expert witness explained that drug traffickers often smuggle cash from the United States to Mexico. Evidence that Martinez was a knowing participant in bulk cash smuggling makes it more probable that she was a knowing participant in drug possession and importation and that she did not act by accident or mistake. Thus, this evidence was relevant for a permissible purpose. *See* Fed. R. Evid. 401, 404(b)(2).

### 2. Undue Prejudice

The second prong of our Rule 404(b) analysis asks whether the extrinsic evidence "possess[es] probative value that is not substantially outweighed by its undue prejudice." *Beechum*, 582 F.2d at 911. Factors the court considers are "(1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions." *Kinchen*, 729 F.3d

at 473.   The second prong is a common-sense and circumstance-specific assessment.  *See Id.* (citing *Beechum*, 582 F.2d at 914).   Because of this, we "give[] great deference to the district court's informed judgment in weighing the factors." *Id.*

We cannot say that the district court abused its discretion in weighing the probative value against the undue prejudice.  First, the Government's case was neither exceptionally strong nor weak, but "the [G]overnment's case need not be 'flimsy' to justify admission of the extrinsic offense evidence." *United States v. Emery*, 682 F.2d 493, 499 (5th Cir. 1982).   Second, the evidence was somewhat probative of Martinez's knowledge and intent because it tended to show her familiarity with cross-border smuggling operations, even if her prior smuggling was unrelated to the instant offense, Martinez played a different role, and it involved different contraband.  *See Beechum*, 582 F.2d at 911 n.15 (stating that "the meaning and nature of the 'similarity' requirement in extrinsic offense doctrine are not fixed quantities" and that extrinsic acts offered to prove knowledge or intent need not have similar physical elements).   Third, the extrinsic acts took place less than a year from the charged offense, so they were "temporally significant." *See United States v. Adair*, 436 F.3d 520, 527 (5th Cir. 2006).   Fourth, the district court gave a model jury instruction twice, explaining the purposes for which the jury could consider the evidence and greatly reducing the risk of undue prejudice. *See United States v. Crawley*, 533 F.3d 349, 355 (5th Cir. 2008); *United States v. Whitfield*, 590 F.3d 325, 354 (5th Cir. 2009) (a jury instruction "that tracks this Circuit's pattern jury instruction . . . is a correct statement of the law").   Significantly, Martinez has not alleged with specificity how any prejudice substantially outweighed the probative value. *See United States v. Cockrell*, 587 F.3d 674, 679 (5th Cir. 2009) ("[A] bald assertion that the probative value of extrinsic offense evidence was substantially outweighed by its prejudicial effect does not show an abuse

of discretion by the district court." (quoting *United States v. Bermea*, 30 F.3d 1539, 1562 (5th Cir. 1994)).

### B. Martinez's Prior Criminal History

Finally, Martinez claims that the district court should have declared a mistrial when Trevino testified that "[Martinez] has a lot of record." Although it is not entirely clear from the record that Martinez moved for a mistrial, defense counsel avers that he made such a motion, and we will proceed under the assumption that he did.

This court reviews "the denial of a motion for mistrial founded on the admission of prejudicial evidence for abuse of discretion." *United States v. Richardson*, 781 F.3d 237, 246 (5th Cir. 2015). Reversal is warranted only if "after a review of the entire record, it appears that there is a significant possibility that the prejudicial evidence had a substantial impact on the jury verdict." *United States v. Valles*, 484 F.3d 745, 756 (5th Cir. 2007). "This [c]ourt has consistently held that an erroneous admission of evidence may be cured by . . . a limiting instruction because jurors are presumed to follow the court's instructions." *United States v. Paul*, 142 F.3d 836, 844 (5th Cir. 1998) (per curiam). If a district "court directs the jury to disregard evidence determined to be inadmissible, the evidence will not provide a basis for reversal unless it is 'so highly prejudicial as to be incurable by the trial court's admonition.'" *United States v. Ramirez-Velasquez*, 322 F.3d 868, 878 (5th Cir. 2003) (quoting *United States v. Klein*, 546 F.2d 1259, 1263 (5th Cir. 1977)).

Martinez has failed to show that Trevino's statement had a substantial impact on the jury's verdict. Moreover, she has not suggested that the jury disregarded the district court's instruction, nor has she provided any reason to conclude that Trevino's vague reference to Martinez's criminal record was "so highly prejudicial" that it could not be cured by the district court's instruction.

*See id.*  Based on the facts before us, the district court's refusal to declare a mistrial was not an abuse of discretion.  *See Richardson*, 781 F.3d at 246.

### III.  CONCLUSION

The district court did not abuse its discretion when it admitted evidence of Martinez's alleged involvement in bulk cash smuggling.  Neither did the court abuse its discretion by refusing to declare a mistrial.  We therefore AFFIRM.