# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-30156

United States Court of Appeals
Fifth Circuit

**FILED**
May 19, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

CODI DODGE,

> Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:17-CR-323-1

Before SOUTHWICK, COSTA, and DUNCAN, Circuit Judges.

PER CURIAM:[*]

A police officer arrested a person he suspected of stealing the officer's own property. Following an FBI investigation into the conduct, the officer was indicted for violating the suspect's rights and for then trying to cover up his actions. After a jury trial, the officer was found guilty of all charges. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-30156

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2016, Codi Dodge, the Deputy Chief of Investigations for the St. Martinville Police Department in Louisiana, was notified that a window-mounted air-conditioning unit was stolen from a home he owned and rented. Dodge and two other St. Martinville police officers, Kim Talley and Troy LeBlanc, drove to Dodge's rental property to investigate. When the officers arrived, they saw that an air-conditioning unit was missing from the front window of the home. Investigating the theft, Dodge asked neighbors whether they saw anyone take the window unit. A neighbor told Dodge that Curtis Ozenne was the thief. The officers then went to Ozenne's house.

Dodge and LeBlanc went to Ozenne's front door, and Talley went to the side of the house where the officers thought there was another door. Without Ozenne's consent, Dodge entered the home. Neither LeBlanc nor Talley accompanied Dodge inside the home. According to Ozenne, he was in the back of the house when Dodge entered. When Dodge called Ozenne's name, Ozenne left the back room and entered the hallway. It was then that he saw Dodge inside the home with his firearm drawn. Dodge began to question Ozenne about the missing air-conditioning unit, and a physical altercation ensued. Ozenne alleged that Dodge started by poking Ozenne in the face with Dodge's firearm, then hit Ozenne with the weapon, and also bit Ozenne on the chest. LeBlanc and Talley, who remained outside, did not see this altercation.

Following Ozenne's arrest, he filed a complaint with the FBI about Dodge's conduct. The FBI investigated Dodge's actions during Ozenne's arrest as well as Dodge's conduct during an unrelated arrest of another individual. As part of its investigation of Ozenne's arrest, the FBI contacted Talley and LeBlanc for interviews. Before those two officers spoke with the FBI, they met Dodge at the police station to "get their stories straight." During the meeting, the officers concocted a story about Ozenne's arrest. Dodge and LeBlanc told

2

the FBI the false story and drafted police reports to match their version of events. Talley, however, did not tell the FBI the false story; she told the FBI a sanitized version of the truth.

The FBI's investigation led to Dodge's being charged in a seven-count indictment. In Counts One and Two, Dodge was charged with deprivation of rights under color of law; in Count Three, he was charged with conspiracy to tamper with a witness and make false reports; in Counts Four and Five, he was charged with false report; in Count Six, he was charged with tampering with a victim witness or informant; and in Count Seven, he was charged with destruction of records.

Prior to trial, the Government filed two notices of intent to introduce evidence of other acts under Federal Rule of Evidence 404(b). The district court overruled Dodge's objections to this Rule 404(b) evidence. Dodge filed a pretrial motion *in limine* seeking to cross-examine Ozenne regarding the alleged theft of the air-conditioning unit. On the first day of trial, the district court denied Dodge's motion.

After an eight-day trial, jurors convicted Dodge on Counts Two, Three, Five, and Six. The presentence investigation report ("PSR") assigned a total offense level of 29.[1] This total offense level included multiple sentencing Guidelines enhancements, including a four-level enhancement under U.S.S.G. § 2A2.2(b)(2)(B) for "otherwise using a dangerous weapon" during the commission of the offense. Dodge objected to the PSR's application of the dangerous-weapon enhancement, arguing there were insufficient facts to support the finding, but the district court overruled Dodge's objection.

---

[1] Because the counts of conviction were grouped together for the purposes of Guidelines calculations, Dodge's adjusted offense level for Count Two determined his sentence range.

No. 19-30156

Dodge was sentenced to 108 months of imprisonment as to Counts Two, Five, and Six, and 60 months of imprisonment, to run concurrently, as to Count Three, followed by three years of supervised release. This sentence was at the high end of the Guideline range of 87 to 108 months. Dodge objected to the substantive reasonableness of the sentence. This timely appeal followed.

## DISCUSSION

Dodge raises several arguments on appeal. He first challenges evidentiary decisions by the district court. He next asserts the district court violated his Sixth Amendment right to confront and cross-examine a witness. Dodge argues the requisite standard of proof for a district court to impose a sentence enhancement is insufficient and, instead, should be heightened. Finally, he challenges the substantive reasonableness of his within-Guidelines sentence. We address the arguments in that order.

### I.    *Evidentiary rulings*

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Kinchen*, 729 F.3d 466, 470 (5th Cir. 2013). This "abuse-of-discretion standard is heightened when evidence is admitted under Federal Rule of Evidence 404(b), because evidence in criminal trials must be strictly relevant to the particular offense charged." *Id.* (quotation marks and brackets omitted). A district court "abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Id.* at 470–71. Even so, "erroneous admissions under Rule 404(b) are subject to a harmless error inquiry." *Id.* at 471.

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but, "[t]his evidence may be

4

No. 19-30156

admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(1), (2). On the Government's motion, the district court considered whether evidence of six "other acts" by Dodge were admissible under Rule 404(b). Of the six prior acts that the district court ruled were admissible, the Government introduced evidence of four at trial.

The Government was allowed to introduce testimony at trial of the following prior acts, which Dodge claims in each case was error: (1) Dodge attempted to pressure another police officer to lie in her official police report; (2) he told a fellow police officer that he put his firearm in an arrestees mouth in an attempt to coerce a confession; and (3) bragged about how, if he were still at his job with the sheriff's office, he would have broken an arrestee's fingers. The district court ruled all of this testimony was admissible under Rule 404(b) because it was "probative of [Dodge's] intent, knowledge, absence of mistake, and lack of accident" and was not substantially outweighed by unfair prejudice to Dodge. Last, the Government introduced testimony that Dodge located FBI Agent Koger on Facebook and knew what Koger's wife and children looked like. The district court ruled testimony regarding threats Dodge made about locating Agent Koger's family was admissible as intrinsic evidence. Dodge does not challenge the district court's ruling that his conduct relating to Agent Koger was intrinsic, and therefore admissible.

We analyze Rule 404(b) admissions under a two-prong test. First, the proposed extrinsic evidence must be "relevant to an issue other than the defendant's character," and second, "the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403." *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978). Dodge does not argue the extrinsic evidence was not relevant for a permissible purpose. Instead, he argues the evidence here fails

the second prong of the *Beechum* test because its probative value is substantially outweighed by its undue prejudice.

To determine whether undue prejudice substantially outweighs the evidence's probative value, we consider "(1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the . . . offenses, and (4) the court's limiting instructions." *Kinchen*, 729 F.3d at 473. Our determination affords "great deference to the district court's informed judgment in weighing the factors." *Id.*

We conclude the district court did not err in finding the probative value of the extrinsic evidence outweighs any unfair prejudice to Dodge. First, although the Government offered testimony from Ozenne and LeBlanc to prove Dodge acted with the specific intent to deprive Ozenne of his constitutional rights, one of Dodge's defense theories at trial was that his actions were justified and not excessive. Therefore, the Government's use of Rule 404(b) evidence of other acts by Dodge was more probative than prejudicial to prove Dodge acted willfully. *See United States v. Brugman*, 364 F.3d 613, 620 (5th Cir. 2004).

Second, the similarities between the extrinsic offenses and charged offenses are notable. Here, the extrinsic evidence involved the same conduct — deprivation of constitutional rights, conspiracy to tamper with a witness and make false reports, and tampering with a victim witness or informant — as the charged conduct. Although "a close resemblance between the extrinsic offense and the charged offense also increases the unfair prejudice to the defendant," Dodge's "prior misconduct lacked the hallmarks of highly prejudicial evidence." *United States v. Hernandez-Guevara*, 162 F.3d 863, 872 (5th Cir. 1998).

6

Third, the extrinsic acts were "not so remote in time to the charged offense to depreciate [their] probity." *United States v. Moye*, 951 F.2d 59, 62 (5th Cir. 1992). Of the three extrinsic acts admitted, the most remote in time was Dodge's attempt to pressure a fellow police officer to lie in her official police report in June of 2015. We have "found that evidence of misconduct committed less than three years prior to the charged crime is admissible, while suggesting that ten years may be too remote." *United States v. Juarez,* 866 F.3d 622, 628 (5th Cir. 2017). We conclude the temporal proximity between the extrinsic acts and charged conduct was sufficient.

Finally, the district court's limiting instruction, both before Officer LaGrange testified about being instructed to lie in a police report and in the final jury instructions, sufficiently explained the "limited purpose for which any evidence of other similar acts may be considered." *Kinchen*, 729 F.3d at 474 (citation omitted). The limiting instruction reduced any risk of unfair prejudice. There was no abuse of discretion in the district court's admission of extrinsic evidence of prior acts under Rule 404(b).

## II.    *Limitations of cross-examination*

Dodge argues the district court unconstitutionally limited the scope of his cross-examination of Ozenne, thereby preventing Dodge from presenting a complete defense. Dodge contends the district court should have allowed him to question Ozenne about whether Ozenne stole the air-conditioning unit from Dodge's rental property. This testimony allegedly would have been relevant to show Ozenne's bias and character for untruthfulness.

We review alleged violations of a defendant's Sixth Amendment rights of confrontation and to present a complete defense *de novo* and apply a harmless error analysis. *United States v. Skelton*, 514 F.3d 433, 438 (5th Cir. 2008). "If there is no constitutional violation, then we review a district court's limitations

on cross-examination for an abuse of discretion, which requires a showing that the limitations were clearly prejudicial." *Id.*

The Confrontation Clause provides a criminal defendant with the right to cross-examine witnesses, but this right is not unlimited. *United States v. Jimenez*, 464 F.3d 555, 559 (5th Cir. 2006). The district court may place limits on "a criminal defendant's right to cross-examine a witness based on concerns about, among other things harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *United States v. Hitt*, 473 F.3d 146, 156 (5th Cir. 2006) (quotation marks omitted). "The relevant inquiry [here] is whether the jury had sufficient information to appraise the bias and motives of the witness." *United States v. Tansley*, 986 F.2d 880, 886 (5th Cir. 1993).

Prior to trial, Dodge filed a motion *in limine* seeking to cross-examine Ozenne regarding the alleged theft of the air-conditioning unit. The district court denied the motion, reasoning that whether Ozenne stole the air-conditioning unit was irrelevant to show Dodge's state of mind and, contrary to Dodge's argument, Ozenne's alleged theft had no bearing on his character for truthfulness. Further, the district court held any argument that Ozenne's factual guilt was marginally probative as to his motive to fabricate was substantially outweighed by the potential danger of misleading the jury. According to the district court, testimony as to whether Ozenne stole the air conditioner would distract the jury and place Ozenne on trial rather than Dodge. The district court recognized that counsel should be afforded wide latitude in cross-examining a witness about his motivation. The court's only prohibition was that Dodge could not ask whether Ozenne actually broke into the rental house or stole any property.

At trial, Dodge was permitted to explore Ozenne's motivations for alleging Dodge used excessive force. Dodge failed to take advantage of the

8

district court's allowance of questions regarding Ozenne's motives for alleging Dodge used excessive force. The failure to use the opportunity does not assist Dodge now, as "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original).

Although Dodge could not ask Ozenne whether he stole the air-conditioning unit, multiple witnesses testified that Dodge believed Ozenne stole the air-conditioning unit. Further, the record reflects that the jury was presented with sufficient information to evaluate Ozenne's credibility including: evidence of Ozenne's prior criminal convictions; testimony that Ozenne had altercations with police in the past; statements regarding Ozenne's prior unrelated civil suits against police officers for misconduct; and questions about a prior inconsistent statement by Ozenne regarding the cause of his injuries. We find no Confrontation Clause violation because Dodge was "permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Skelton*, 514 F.3d at 443.

Because there was no constitutional violation, we next review the district court's limitation of Dodge's cross-examination of Ozenne for an abuse of discretion. *See id.* at 438. The district court's ruling on Dodge's motion *in limine*, made during the first day of trial, was that Ozenne's actual guilt regarding the theft of the air-conditioning unit was either irrelevant or more prejudicial than probative or risked confusing the jury. *See* FED. R. EVID. 402, 403. These are appropriate reasons for limiting Dodge's cross-examination. We find no abuse of discretion in the district court's ruling. *See Skelton*, 514 F.3d 442–43.

9

### III.    *Sentencing challenges*

Dodge first argues the district court should have applied a standard of proof more stringent than the preponderance of the evidence in determining whether to impose a sentencing enhancement because of how the enhancement impacted the length of his sentence.  This argument, however, is foreclosed by circuit precedent that requires such a standard be used.  *United States v. Anderson*, 560 F.3d 275, 283 (5th Cir. 2009).

Next, Dodge challenges the substantive reasonableness of his 108-month sentence.  We review the substantive reasonableness of a sentence under a "highly deferential" abuse-of-discretion standard "because the sentencing court is in a better position to find facts and judge their import under the [Section] 3553(a) factors with respect to a particular defendant." *United States v. Diehl*, 775 F.3d 714, 724 (5th Cir. 2015).  If a sentence is within the Guidelines range, we may presume it is reasonable.  *See United States v. Diaz Sanchez*, 714 F.3d 289, 295 (5th Cir. 2013).  "Th[is] presumption is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors." *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009).

Dodge argues his sentence is unreasonable because the district court failed to consider the impact of the conviction in protecting the public from further crimes by Dodge and failed to fully consider Dodge's history and characteristics.  Dodge's argument is predicated on the fact that although the district court "referenced" the sentencing factors enumerated in Section 3553(a), the district court "made note of only four of them."  The district court's ruling, though, came only after the court reviewed the PSR, sentencing memorandum, and letters of reference, heard both a victim impact statement

10

and a statement from Dodge himself, and expressly stated that it considered the factors set forth in Section 3553(a).

Dodge fails to rebut the presumption of reasonableness we afford to a within-Guidelines sentence because the district court is not required to "engage in robotic incantations that each statutory factor has been considered," *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006) (quotation marks omitted), or give the factors equal weight, *United States v. Alvarado*, 691 F.3d 592, 597 (5th Cir. 2012). The record reflects the district court considered the Section 3553(a) factors. We find no abuse of discretion in the district court's within-Guidelines sentence.

AFFIRMED.