# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 2, 2022

Lyle W. Cayce
Clerk

No. 21-40634

United States of America,

*Plaintiff—Appellee*,

*versus*

Cody Ryan Turner,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:20-CR-272-1

Before Jones, Ho, and Wilson, *Circuit Judges*.

Per Curiam: *

After a three-day jury trial, Cody Ryan Turner was convicted of attempted coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b). He asks this court for a new trial based on two of the district court's evidentiary rulings. Because the district court's rulings were not in error, the judgment is AFFIRMED.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-40634

## BACKGROUND

Turner attempted to execute a plan to meet up with a 13-year-old girl he had been conversing with online for the purpose of engaging in sexual activity with her. Using a messaging app, he sent sexually suggestive messages to a profile with the username "Becka Gerl," which was represented by a photo of a young girl with braces sticking out her tongue. After initially not responding to his messages, she eventually told him that she was only 13 years old and that he likely was confusing her with someone else. Undeterred, he offered to be her "sugar daddy" if she was willing to meet with him in secret. Becka Gerl expressed hesitancy at first, but after Turner persisted, she eventually showed interest in meeting. The two continued conversing over the next couple of months. The conversation was primarily sexual in nature, with Turner proposing that he "teach" Becka Gerl how to engage in various sexual acts at their eventual meeting.

On September 8, 2020, they agreed that Turner would drive from Irving, Texas to Becka Gerl's apartment in Plano, Texas for this sexual encounter. He urged her to remain "open minded to all things sex." But before Turner drove to the apartment, he asked Becka Gerl whether she was "a cop or part of a sting unit." She said no. He further noted: "You are very young so there is a big risk for me. Just want to verify." He followed up with: "But I do want to cum over now." And thus he left for her apartment.

Fortunately, Becka Gerl was actually Special Agent Jennifer Mullican, a member of the FBI's child exploitation task force. When Turner arrived at the address Becka Gerl provided, he was met with law enforcement officers and was promptly arrested. Turner's defense from the moment he was arrested was that he thought the whole chat was "BS" and that he was conversing with an adult posing as a minor for purposes of "role-play." He said that he drove to the apartment complex to "call out" whomever was

2

behind the chat, never actually believing a real 13-year-old girl awaited him. During questioning, he also volunteered that, in 2009, he had been arrested in Fort Worth, Texas for online solicitation of a minor who was also 13 years old.[1]  When Turner's criminal history checks came back clear, Turner explained that the former arrest had been expunged "because of the– the same thing that I'm trying to explain now."  He elaborated that he felt the "same thing I felt in '09," namely that the chats were all fake.  According to him, he previously played this game of "role-play" with the "fake" child on the other end, but this was the first time he tried to meet in order to "call BS on" the other person.

A grand jury indicted Turner on one count of attempting to persuade or entice a minor to engage in sexual activity, and the case went to trial. Relevant here, two evidentiary disputes arose during the trial.  First, the Government sought to admit evidence of Turner's statements regarding his 2009 arrest for online solicitation of a minor.  It contended that this prior arrest was relevant to discern Turner's intent in driving to Becka Gerl's apartment in light of his defense that this whole ordeal was part of some "role-play" game.   The defense objected, contending that this was propensity evidence under Federal Rule of Evidence 404(b).  The district court allowed the evidence due to the "clash about what the defendant's intent was," and it explained that "evidence of an uncharged offense for solicitation of a minor is relevant to intent, a proper non-character issue under Rule 404(b), because it requires the same intent as the charged offense and because evidence of this uncharged offense lessens the likelihood that the defendant committed the charged offense with innocent intent."  The court

---

[1] Unlike here, he had not actually gone to meet the previous girl but was arrested in his apartment.

also gave the jury a limiting instruction both when the evidence was offered and when the jury was given final instructions.

Second, the defense challenged as irrelevant the admission of evidence showing that, while Turner was arranging to meet up with Becka Gerl, he was also texting adults to arrange for commercial sex in Plano that same day.  The Government countered that commercial sex was Turner's back-up plan in the event things did not go as planned with Becka Gerl, and that the evidence was thus relevant to establish that he intended "sex . . . to happen in some way, shape, or form on September 8th, 2020."  The district court again agreed, concluding that the evidence was admissible under Rule 404(b) because it went "to Mr. Turner's intent in appearing at the prearranged meet-up location in Plano, Texas, which Mr. Turner has squarely put at issue in this case."  This evidence was "necessary to corroborate other evidence the government would put in of Mr. Turner's actual intent on that day."  The court further concluded that, even though the communications with sex workers "may be somewhat prejudicial to Mr. Turner," any prejudicial effect did "not substantially outweigh their probative value."  The district court again issued limiting instructions both when the evidence was presented to the jury and in the final jury instructions.

The jury convicted Turner as charged.  The district court sentenced Turner to 120 months in prison and 10 years of supervised release.  Turner timely appealed.

## STANDARD OF REVIEW

The district court's evidentiary rulings are reviewed for abuse of discretion, with heightened review in criminal cases.  *See United States v. Kinchen*, 729 F.3d 466, 470 (5th Cir. 2013).  "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence."  *Id.* at 470–71 (quoting *United States*

*v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008)).  But erroneous admissions under Rule 404(b) are not reversible if the error was harmless.  *Id.* at 471.

## DISCUSSION

Based on the admission of his 2009 arrest and his arrangements for commercial sex, Turner asks this court to vacate his conviction and remand for a new trial.  We decline to do so.  The district court did not abuse its discretion when ruling on these evidentiary issues.[2]

Rule 404(b) permits the admission of evidence of other crimes for purposes other than to prove the defendant's character, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  FED. R. EVID. 404(b).  Even for such purposes, however, proof of an uncharged crime or other act must be sufficient to support, by a preponderance of the evidence, a conclusion that the prior "act actually occurred."  *United States v. Ramos-Rodriguez*, 809 F.3d 817, 821 (5th Cir. 2016).  Federal Rule of Evidence 403 also requires that the probative value of the evidence not be "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  FED. R. EVID. 403.  This court gives "great deference" to the district court's "informed" decision under Rule 403.  *United States v. Williams*, 620 F.3d 483, 491 (5th Cir. 2010) (internal quotation marks omitted).  Accordingly, this court will not reverse a Rule 403 decision absent "a clear showing of prejudicial abuse of discretion."  *Id.* (internal quotation marks and citation omitted).

---

[2] But even if it had, any error would have been harmless in light of the overwhelming evidence of guilt presented at trial.

## I.    Turner's 2009 Arrest

Turner argues that the admission of his 2009 arrest was an abuse of discretion because (1) the Government failed to prove by a preponderance of the evidence that the arrest actually occurred; (2) it constituted propensity evidence admitted for an improper purpose; and (3) any probative value of the 2009 arrest is substantially outweighed by the danger of unfair prejudice. Each point is unavailing.

The Government plainly met its burden of establishing that Turner was arrested in 2009. Turner *himself* volunteered that the arrest occurred and provided specific details to law enforcement, including when and where the arrest occurred and the child's age. Turner provides no evidence to suggest that he was lying to officers when he recounted these facts. *See United States v. Smith*, 804 F.3d 724, 733 (5th Cir. 2015).

And the district court was well within its discretion to admit the evidence. Turner put his intent at issue by arguing that he did not believe Becka Gerl was a minor and by suggesting that he was at the apartment complex to "call BS on" the adult behind the fake account. The defense told the jury during closing arguments that Turner did "not intend to have sexual relations with Becka Gerl that day" but, rather, he was merely engaged in "role play" and he went to the apartment to "prove" that the person he was communicating with was "a fake." Evidence of prior acts that corroborate or contradict this claim is both highly relevant and  admissible as evidence of intent. He thus rendered his 2009 arrest relevant by calling his intent into question. *See, e.g.*, *United States v. Monsivais*, 737 F. App'x 668, 672 (5th Cir. 2018) (unpublished) (holding that evidence of prior communication with another minor was "highly relevant" and "directly responsive to several of [the defendant's] defenses," including a role-playing defense); *United States v. Pierson*, 544 F.3d 933, 941 (8th Cir. 2008) (defendant's denial that he

intended to actually have sex with a minor "opened the door to the admission of his prior conviction for indecent contact with a child").

That the arrest occurred 11 years ago does not change our conclusion. *See United States v. Arnold*, 467 F.3d 880, 885 (5th Cir. 2006). The similarity between the two arrests is evident. Indeed, Turner thought to compare his 2009 arrest with his present arrest during his conversation with the police. Nor did the admission of this evidence offend Rule 403. As discussed, the evidence is highly relevant, and Turner fails to identify how any prejudice substantially outweighs this value, especially given the district court's careful limiting instructions.

## II.    Turner's Commercial Sex Arrangements

Turner next contends that the evidence of his arrangements for commercial sex were improperly admitted as irrelevant and highly prejudicial. Both points are meritless.

The evidence is relevant because it illustrates Turner's intent to arrange and engage in sexual activity in Plano on the day of his arrest. While he was arranging to meet with Becka Gerl, he was simultaneously sending messages to arrange for prostitutes. The Government contended that, while his preference was to have sex with the minor, if that did not work out, he wanted to ensure that he would have other options. Turner calls this theory "merely speculation," but we disagree. In fact, during his conversation with Becka Gerl, Turner acknowledged that their first encounter might not result in intercourse because of how new this activity was to her. While he was hopeful that it would, he assured her that they would take things slowly at first. These messages tend to corroborate the Government's theory that he wanted to make sure he had a backup plan. Additionally, his arrangements contradict his assertions that he traveled that distance simply to expose an adult posing as a child. They indicate that he drove to Plano to have sex, one

way or the other. Accordingly, we agree with the district court that this evidence was highly probative.

Further, this evidence was not too prejudicial. The arrangement for commercial sex and the arrangement for sexual activity with a minor are sufficiently distinct that juror confusion is unlikely. Turner points to no other evidence that could serve the same purposes. While the texts certainly do not shed favorable light on Turner, they are not so prejudicial as to substantially outweigh their probative value.

For these reasons, the judgment is AFFIRMED.